## SMITH *vs.* EWERS.

1. The fourth section of the act of 1820, (Clay's Digest, 550 § 4,) which gives a penalty against any person who shall sell an estray before the expiration of twelve months, applies only to estrays which are taken up and appraised as required by the first section of the act.
2. To entitle the plaintiff in error to a reversal, he must show injury as well as error.

ERROR to the Circuit Court of Mobile.
Tried before the Hon. John Bragg.

J. A. CUTHBERT, for plaintiff in error.
BLOCKER, *contra*.

CHILTON, J.—This was a *qui tam* action by the plaintiff in error against the defendant, to recover one hundred dollars, the penalty given by the fourth section of the act of 1820 (Clay's

Dig. 550 § 4,) for selling a stray horse before the expiration of twelve months.

The whole proof is set out in a bill of exceptions, and is as follows: The plaintiff, having lost his horse from his possession in January, 1849, found him after the expiration of three days in the defendant's stable, and was informed by the overseer of the stable that the horse had come there in the night, and had attempted to enter it, but upon being driven away, went to another entrance, where he was taken up. Plaintiff claimed the horse, but the defendant's overseer required him to pay a bill of $2.25 for the stablage of the horse, that being the usual charge for keeping a horse three days. This sum the plaintiff refused to pay, but offered $1.25, which was rejected by the overseer, who thereupon refused to give up the horse. The plaintiff proved that the defendant had published an advertisement in the Gazette, as follows:

"STRAY HORSE—Came to the stable of the subscriber on the night of the 8th inst., a gray horse, (describing him.) The owner is required to come and get him, or he will be sold to pay stable fees. January 19. (Signed,) F. EWERS."

The stable charges amounting to a considerable sum, the defendant served a written notice on the plaintiff, informing him that, unless he came forward and paid the charges for keeping the horse, the animal would be sold to pay them. This notice being unheeded, defendant caused the horse to be sold accordingly in February, 1849; the amount of the sale money being $30.

Upon this proof, the plaintiff asked the court to charge the jury, that he was entitled to recover the amount of the penalty sued for, under the statute forbidding the sale of an estray within twelve months. The court, however, responded to this charge, "that the provisions of the statute were manifestly intended to allow that time to owners of stray property to find and reclaim it;" and charged the jury that "if they believed the owner in this case had found the horse, then the horse, as to him, was no longer an estray: that in such case he could not avail himself of the penalty."

The section on which the action is founded is as follows: "If any person shall take or send away any stray out of this State, on any pretence whatsoever, or shall trade or sell the

same under twelve months, he or she, so offending, shall forfeit and pay one hundred dollars, to be recovered in any court of this State having jurisdiction thereof, one half to the use of the informer, and the other half to the use of the county wherein the offence shall have been committed; and, moreover, shall pay to the owner the amount of the appraisement, and if no owner appear, then to the county, subject to the regulations hereinafter ordered under the sixth section of this act."

It is quite apparent, we think, from the phraseology employed in the foregoing section, that the penalty is only given by it as against one who has taken up an estray under the first section. That section requires that "every person who shall take up an estray, which shall be found on his plantation or land, shall forthwith give information thereof to some justice of the peace for the county, and make oath before such justice that the same was taken up at his or her plantation or place of residence, or his or her land adjoining the same, and that the marks or brands have not been defaced or altered since the taking up; and thereupon the justice shall issue his summons to two disinterested house-holders of the neighborhood, commanding them, after being duly sworn, to appraise the same without partiality, favor or affection, and certify the value under their hands, together with a particular description of the kind, marks, brands, stature, color, and age; which certificate shall be attested by the justice, and transmitted by him to the clerk of the County Court within ten days thereafter, to be by such clerk entered in a book to be kept for that purpose," &c. The record before us does not disclose that any thing required by this section was performed by Ewers. On the contrary, the proof pretty clearly shows that he merely took the horse into his stable, kept it three days, when the owner came and claimed it, but refusing to pay the usual charge for keeping, Ewers retained the horse under a supposed lien for its feed. This being the state of the case, and the horse not having been *strayed* under the statute, the party selling it cannot be made liable to the penalty denounced against one who sells a stray before the expiration of twelve months. How could the owner recover the amount of the appraisement, if no such appraisement had

been made? Yet the fourth section which gives the penalty also confers this right, thus showing that it is alone applicable to cases where the animal has been taken up and appraised as required by the first section.

If it is replied, that the fifth section of the act gives a *qui tam* action to recover a similar penalty against any one who " shall *take up or use a stray, contrary to the act*," it is a sufficient answer to say, that this action is brought to recover for *selling* as provided in the fourth section, and not for failing to " take up or use," as prescribed by the other portions of the act. Whether, under the circumstances in proof, the defendant would be liable to the penalty named in the fifth section for failing to take up the horse as provided by the first, is a question which it is improper now to decide, as it is not involved in the case.

Under the construction which we place upon the statute, it results that the charge asked was properly refused. The charge given, as an abstract proposition of law, we do not think was correct, assuming as a predicate for it that the defendant had regularly strayed the horse as the statute requires. After this is done, the *status* of the property continues, until the owner becomes re-invested with it by filing a certificate sworn to, as provided by the eleventh section of the act, and the payment of the cost and expenses, the mode of ascertaining which, when the parties cannot agree upon the amount, is stated in the third section.

The charge, however, must be construed with reference to the proof. That justified the court in instructing the jury, that the horse could not be considered an estray under the fourth section, and that consequently the defendant was not liable to the penalty sued for. The court arrived at a correct conclusion, when it was asserted that the horse was not, under the proof and with reference to this action, an estray, but assigned a wrong reason for it, namely, that the owner was known; whereas a sufficient ground for the charge is found in the fact, that there was a total failure to show that the requisitions of the statute had been complied with, so as to constitute the horse an estray, as contemplated by the section on which the action is founded. As, however, no possible injury could have resulted to the plaintiff from the charge,

even were we to concede it to be erroneous, we cannot reverse the cause. The rule is well established by numerous decisions, that to entitle a plaintiff to a reversal, he must show injury as well as error.

Let the judgment be affirmed.